**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR AN ARREST WARRANT**

This affidavit is submitted by Special Agent Ryan Bonura in support of a criminal complaint and application for arrest warrant relating to:

JEAN WILTENE EUGENE (hereinafter EUGENE), a U.S. citizen who was born in Haiti and who currently resides in Key West, Florida.

I respectfully submit that there is probable cause to believe that on or about February 10, 2020, and on or about September 23, 2021, EUGENE has committed the following criminal offenses in violation of United States law:

1.  22 U.S.C. § 2778 (Arms Export Control Act);

2.  50 U.S.C. § 4819 (Export Control Reform Act); and

3.  18 U.S.C. § 554(a) (Smuggling).

**AGENT BACKGROUND**

1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since September 2022. I am currently assigned to the Miami Division of the FBI. In this capacity, I investigate violations of federal criminal law, specializing in criminal matters pertaining to U.S. extraterritorial jurisdiction. By virtue of my FBI employment, I perform and have performed a variety of investigative tasks and have received training in the conduct of criminal investigations. I have also received training and gained experience in interviewing and interrogation techniques, the execution of federal search warrants and seizures, and the identification and collection of computer and cellphone-related evidence. In addition, I have personally participated in the execution of federal search warrants involving the search and seizure of computer equipment, cellphones, and narcotics. As such, I am an "investigative or law

1

enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code. As a federal agent, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer I am authorized to execute warrants issued under the authority of the United States. I have personally participated in this investigation and have witnessed many of the facts and circumstances described herein. I have also received information from other federal and foreign law enforcement officials relating to this investigation. The statements contained in this affidavit are based on my own observations, witness interviews, document reviews and reliable information provided to me by other federal and foreign law enforcement officials. Because this affidavit is submitted for the purpose of seeking the issuance of a criminal complaint and arrest warrant, it does not include every fact known to me concerning the investigation.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction and venue to issue the requested complaint. Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within the District of Columbia. *See* 18 U.S.C. § 3237. Moreover, venue for 18 U.S.C. § 554(a) is proper in the District because there is venue for the underlying offenses, 22 U.S.C. § 2778 & 50 U.S.C. § 4819, in the District.

## STATUTES AND REGULATIONS

*The Arms Export Control Act and the International Traffic in Arms Regulations*

3.      The Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, authorizes the President of the United States, among other things, to control the export of "defense articles" by designating items, such as certain weapons and their components, on the United States Munitions List ("USML"), which is codified at 22 C.F.R. § 121.1. It is a crime for anyone to willfully violate any provision of the AECA or its attendant regulations, the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. §§ 120 through 130.

4.      The AECA and the ITAR require a person to apply for and obtain an export license from the United States Department of State's Directorate of Defense Trade Controls ("DDTC") before exporting defense articles from the United States under 22 U.S.C. § 2778(b)(2) and 22 C.F.R. §§ 120.1 and 121.1. DDTC is located in the District of Columbia. Accordingly, it is a crime for an exporter to willfully fail to obtain an export license or other written authorization from the DDTC before exporting a defense article to another country. 22 U.S.C. § 2778(c) and 22 C.F.R. § 127.1(a) (1). Pursuant to the ITAR, it is a violation for a person to conspire to export or to cause to be exported any defense article without a license. 22 C.F.R. § 127.1. It is also unlawful for any person to "knowingly or willfully cause, or aid, abet, counsel, demand, induce, procure, or permit the commission of any act prohibited by 22 U.S.C. § 2778," or any regulation issued there under. 22 C.F.R. § 127.1(d).

5.      "Export" is defined in the ITAR as an actual shipment of a defense article from the United States, including by sending or taking a defense article out of the United States in any manner. 22 C.F.R. § 120.17(a)(1).

6.      The USML sets forth twenty-one categories of defense articles that are subject to the ITAR and the DDTC's export licensing controls. 22 C.F.R. § 121.1. As relevant here, prior to

3

March 9, 2020, Category I(a) of the USML included "Nonautomatic and semi-automatic firearms to caliber .50 inclusive (12.7 mm)."

7.    At all times relevant to the conduct described herein prior to March 9, 2020, it has been illegal to export defense articles without a license to Haiti.

***The Export Control Reform Act of 2018 and the Export Administration Regulations***

8.    The Export Control Reform Act of 2018 ("ECRA") provides, among its stated policy objectives, that "[t]he national security and foreign policy of the United States require that the export, reexport, and transfer of items, and specific activities of United States persons, wherever located, be controlled . . . ." 50 U.S.C. § 4811(1). To that end, ECRA grants the President the authority to control "(1) the export, reexport, and transfer of items, whether by United States persons, wherever located, or by foreign persons, wherever located; and (2) the activities of United States persons, wherever located, relating to" specific categories of items and information. *Id.* at § 4812(b). ECRA further grants to the Secretary of Commerce the authority to establish the applicable regulatory framework. *Id.* at § 4813(a).

9.    Pursuant to ECRA, the Department of Commerce ("DOC") reviews and controls the export of certain items, including commodities, software, and technologies, from the United States to foreign countries through the Export Administration Regulations ("EAR"), 15 C.F.R. §§ 730-774. In particular, the EAR restrict the export of items that could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. The EAR impose licensing and other requirements for items subject to the EAR to be exported lawfully from the United States or re-exported lawfully from one foreign destination to another.

10.    The most sensitive items subject to EAR controls are identified on the Commerce

4

Control List ("CCL"), published at 15 C.F.R. part 774, Supp. No. 1. Items on the CCL are categorized by an Export Control Classification Number ("ECCN") based on their technical characteristics. Each ECCN has export control requirements depending on the destination, end user, and end use.

11.    Relevant here, the DOC is currently responsible for licensing the export of a variety of firearms and related commodities from the United States. When required, these licenses are issued by the DOC's Bureau of Industry and Security ("BIS"), which is located in the District of Columbia.

12.    It is a crime to willfully violate, attempt to violate, conspire to violate, or cause a violation of any order, license, regulation, or prohibition issued pursuant to ECRA. 50 U.S.C. § 4819. Willful violations of ECRA are crimes punishable by a prison term of up to 20 years and fines of up to $1,000,000. 50 U.S.C. § 4819(b).

13.    On or about March 9, 2020, certain items in Category I of the USML, including all items in Category I(a) of the USML, were transferred to the CCL and were thereafter controlled under the relevant ECCNs and subject to the EAR.

14.    Under the revised CCL, "[n]on-automatic and semi-automatic firearms equal to .50 caliber (12.7 mm) or less" are controlled under ECCN 0A501.a. Firearms controlled under ECCN 0A501.a are controlled for national security, regional stability, and anti-terrorism reasons, and require a license for export to Haiti.

### Smuggling

15.    Title 18, United States Code, Section 554 makes it illegal to export an item in violation of another law, including the ECRA, and also makes it illegal to purchase, store, sell, or conceal any item intended for illegal export from the United States. Specifically, Section 554(a) provides: "Whoever fraudulently or knowingly exports or sends from the United

States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States," shall be subject to criminal penalties. Violations of Section 554 are punishable by a prison term of up to 10 years. 18 U.S.C. § 554(a).

### *The Gun Control Act*

16.     The Gun Control Act, 18 U.S.C. § 921 *et seq.*, requires a license to deal in firearms from the Attorney General, who is located in the District of Columbia. Firearms dealers are required to fill out, keep, and maintain paperwork, *i.e.*, a Firearms Transaction Record, related to certain firearms sales, and make the same available to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), which is also located in the District of Columbia. Among other things, it is illegal under the Gun Control Act to make a false statement during the purchase of a firearm. *See* 18 U.S.C. § 922(a)(6).

### **FACTS SUPPORTING PROBABLE CAUSE**

### *The Defendant*

17.     Defendant JEAN WILTENE EUGENE (hereinafter EUGENE), is a U.S. citizen who was born in Haiti and currently resides in Key West, Florida. According to EUGENE, he owns and operates a gas station located in the Croix-des-Bouquets area to the east of Port-au-Prince, Haiti.

### *Firearms Purchased by EUGENE and Subject to Export Controls*

18.     On or about February 10, 2020, and on or about September 23, 2021, EUGENE and others known and unknown, in an offense committed within the District of Columbia and

elsewhere, knowingly exported and caused the exportation of firearms from the United States to Haiti without having first obtained the required licenses from DDTC and BIS, both located in the District of Columbia, in violation of the AECA and ECRA.

19.    EUGENE purchased U.S.-origin goods, specifically firearms, from several companies, for export to Haiti. As relevant here, I have reviewed licensing determinations by BIS of the firearms listed herein, which indicate the firearms have been controlled under ECCN 0A501.a since March 9, 2020, and, therefore, were subject to the EAR after that date. Items under this ECCN are controlled for national security, regional stability, and firearms convention reasons. According to BIS, export of these weapons from the United States to Haiti required an export license issued by BIS. A search of BIS licensing information using the names of the individuals involved in these transactions failed to identify any valid export license(s) involving these firearms.

20.    In addition, I have reviewed a licensing determination by DDTC of the firearms listed herein, which indicates that, prior to March 9, 2020, all of the firearms were controlled under Category I(a) of the USML. Export of these weapons from the United States to Haiti prior to March 9, 2020, required a license from DDTC. A search of DDTC licensing information using the names of the individuals involved in these transactions failed to identify any valid export license(s) involving these firearms.

21.    I have reviewed records from a firearms dealer in Key West, FL, which are ATF forms required to be filled out and maintained by the firearms dealers, showing that, on the following dates, EUGENE purchased the following firearms from a licensed firearm dealer:

| Make | Model | Caliber | SN | Location | Date |
|---|---|---|---|---|---|
| Glock | 19 | 9mm | YSX120 | Key West, FL | 5/4/2015 |

| Rock Island Armory | M1911-A1 | 9mm | RIA1610887 | Key West, FL | 5/4/2015 |
|---|---|---|---|---|---|
| FMK | 9C1G2 | 9mm | BB5410 | Key West, FL | 2/22/2016 |
| Kahr Arms | CW9 | 9mm | EK4644 | Key West, FL | 2/22/2016 |
| Hecklor & Koch | MR556 | 5.56mm | 241202375 | Key West, FL | 2/22/2016 |
| Smith & Wesson | M&P | 0.45 | MRD5674 | Key West, FL | 2/2/2017 |
| Glock | 21 | 0.45 | XUF673 | Key West, FL | 3/14/2018 |
| Century Arms | VZ2008 | 7.62x39mm | VZ04667 | Key West, FL | 5/8/2020 |
| Sig Sauer | M11-A1 | 9mm | 45A054134 | Key West, FL | 5/8/2020 |

22.    At all times relevant to the conduct described herein, ATF has required that Form 4473, Firearms Transaction Record, must be filled out as a condition of sale. Both of the versions of Form 4473 in effect between April 2012 and May 2020 have included the following statement in bold at the top of the first page of the form:

> **WARNING: You may not receive a firearm if prohibited by Federal or State law. The information you provide will be used to determine whether you are prohibited from receiving a firearm. Certain violations of the Gun Control Act, 18 U.S.C. 921 *et. seq.*, are punishable by up to 10 years imprisonment and/or up to a $250,000 fine.**

23.    Both of the then-effective versions of Form 4473 also included a warning in bold at the top of the first page of the form to "[r]ead the notices, instructions, and definitions on this form."

24.    The version of Form 4473 in effect between October 2016 and May 2020 (the "October 2016 Form") continued under "notices, instructions, and definitions" on page 3 of the 6-page form:

> **Exportation of Firearms**: The State or Commerce Departments may require a firearms exporter to obtain a license prior to export. **Warning**: Any person who

exports a firearm without proper authorization may be fined not more than $1,000,000 and/or imprisoned not more than 20 years. See 22 U.S.C. 2778(c).

25.     The version of Form 4473 in effect between April 2012 and October 2016 (the "April 2012 Form") gave a slightly different warning under "notices, instructions, and definitions":

> **Exportation of Firearms**: The State or Commerce Departments may require you to obtain a license prior to export.

26.     I have reviewed records from the aforementioned firearms dealers showing that, on or about the following dates, EUGENE filled out Form 4473 in order to purchase firearms with the aforementioned language, and thus was aware that such firearms may not be exported without proper authorization from the U.S. government.

| Date of Form | Location of Dealer |
|---|---|
| 5/4/2015 | Key West, FL |
| 2/22/2016 | Key West, FL |
| 2/2/2017 | Key West, FL |
| 3/14/2018 | Key West, FL |
| 5/9/2020 | Key West, FL |

27.     Additionally, at all times relevant to the conduct described herein, Form 4473 asked in Question 11(a):

> Are you the actual transferee/buyer of the firearm(s) listed on this form? **Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.**[1]

28.     Also, on or about the dates listed above, EUGENE answered "Yes" to question 11(a), and, as discussed further herein, knowingly submitted false information in furtherance of the purchase of the firearms.[2]

---

[1] In the final sentence of Question 11(a), the April 2012 Form says only "buyer," while the October 2016 Form say "transferee/buyer." Otherwise, the language is identical.

[2] On the February 2, 2017 form, EUGENE checked both YES and NO, but put his initials "JWE" next to the box marked "NO," indicating a mistake.

### *Company 1's Records of EUGENE's Exports and Smuggling*

29.    Business records of Company 1, a Florida-based export company, show that EUGENE arranged to ship vehicles to Haiti through Company 1 on multiple occasions. In particular, Company 1's business records show the following shipments:

    a.    A 2003 Mitsubishi Fuso (Vehicle Identification Number ending in *347), from Port Everglades, FL, to St. Marc, Haiti, on or about February 10, 2020, shipped by Person 1 to EUGENE as the consignee, with a Document Number FL50347.

    b.    A 2007 Toyota Rav 4 (Vehicle Identification Number ending in *019), from Fort Lauderdale, FL, to St. Marc, Haiti, on or about September 23, 2021, shipped by Person 2 to Person 3 as the consignee, with a Booking Number of FL-68161.[3]

30.    In addition to the above shipments, EUGENE had previously shipped two vehicles from Florida to Haiti, on or about March 22, 2019, and on or about March 26, 2019. As part of those previous shipments, on both occasions EUGENE signed Company 1's Terms and Conditions of Shipment, which require that the shipper agree to the following statement:

> [U]nder penalty of perjury, I swear that the subject Vehicle/Container/Trailer contains NONE of the following:
>
> **Firearms or Ammunition, or Paints, or Motor Oils, or Used Generators, or Propane Fuel Tank, or Gas Cans, or any Hazardous materials, Contraband of Any Nature Such as: Drugs or Liquors, OR Any Other Items Prohibited by Law.**

However, Company 1 did not require EUGENE to sign the same Terms and Conditions with respect to the shipments in February 2020 and September 2021.

### *EUGENE's Statements Regarding Exports and Smuggling*

---

[3] While EUGENE is not listed in the paperwork for this transaction, he did have a copy of the paperwork from Company 1 on his phone, which he showed to agents during his non-custodial interview on March 18, 2022.

### A. March 18, 2022 Statement

31.     Law enforcement spoke with EUGENE in a consensual non-custodial interview on or about March 18, 2022. During that interview, EUGENE initially stated that he had "accidentally" sent firearms to Haiti by putting them in a vehicle that he was shipping to Haiti in February 2020. EUGENE then stated that he had shipped weapons to Haiti in a vehicle on a second occasion.

32.     After being confronted by agents regarding the inaccuracies in his statement and warned that making a false statement to federal agents was a crime, EUGENE admitted that he knowingly exported and smuggled export-controlled firearms from the United States to Haiti on two occasions, which coincided with the shipments in Company 1's records:

    a.  According to EUGENE, in approximately February 2020, he shipped an Isuzu vehicle to Haiti with firearms hidden inside.[4] EUGENE flew to Haiti to receive the car, but sent an associate, Person 3, to the port to obtain the weapons and bring them to EUGENE's house in Haiti. EUGENE then recovered the firearms from the vehicle's interior. EUGENE also produced a photograph of a bill of lading detailing the shipment of a vehicle to Haiti on February 10, 2020, and showing PO number FL50347 and the name of Person 1.

    b.  According to EUGENE, in approximately September 2021, he shipped a Toyota Rav 4 to Haiti with firearms hidden inside. EUGENE stated that he placed the firearms, as well as magazine and ammunition, in a bin that he placed in the rear passenger area of the vehicle. EUGENE placed food and other items around the bin

---

[4] Though EUGENE claimed in his interview this vehicle was an Isuzu, the bill of lading obtained by law enforcement indicates the vehicle shipped was actually the Mitsubishi, noted above.

to cover it up so border authorities would not find the firearms. EUGENE also produced a photograph of a bill of lading detailing the shipment of a vehicle to Haiti on September 23, 2021, showing Booking Number FL-68161 and listing Person 2 as the shipper and Person 3 as the consignee.

33.    EUGENE signed a statement that he shipped weapons to Haiti on 2 occasions and that he knew this was illegal. The signed statement also stated he used another person's name as the sender for the second shipment. This is reflected in the bills of lading obtained from Company 1.

34.    According to EUGENE, he knew of a Haitian gang called 400 Mawozo and its leaders, JOLY GERMINE and LANMO SANJOU. EUGENE's employees gave the gang EUGENE's phone number after the gang demanded free gas from EUGENE's gas station in Haiti. EUGENE stated that the gang leaders called him to make demands for gas.

### B. March 19, 2022, Messages

35.    On or about March 19, 2022, EUGENE sent FBI agents an email with a photograph of the date, a list of eight firearms, and a photograph that included six handguns and three rifles. This was meant to show that the firearms EUGENE purchased were at his business. The photograph did not contain the Kahr Arms or the FMK that EUGENE purchased and took possession of in February 2016, nor the Glock Model 21, .45 caliber purchased and took possession of in March 2018.

### C. April 11, 2022 Statement

36.    On or about April 11, 2022, law enforcement again spoke with EUGENE in a consensual non-custodial interview.

37.      In that same interview, EUGENE clarified that when he shipped the firearms to Haiti, he used his associates, Person 1 and Person 2, to ship the vehicles within which the firearms were hidden. EUGENE stated that Person 1 and Person 2 were not aware of the weapons hidden in the vehicles.

38.      EUGENE stated in that same interview that all of the firearms he had purchased in his name were currently located at his gas station in Haiti and that none of these firearms remained in the United States. EUGENE stated that his employees had the weapons with them in Haiti. When agents asked about the Glock Model 21, EUGENE confirmed this was at his business, but provided no explanation as to why it was not in the photograph sent to agents on March 19, 2022. EUGENE disputed the accuracy of the ATF Form which stated that he took possession of the Kahr Arms or FMK on February 27, 2016. He also stated his employees may have taken possession of those guns and had not returned them.

39.      EUGENE further stated, again after being confronted by agents, that he knew that it was illegal to ship weapons to Haiti. EUGENE stated and maintained that the sole purpose of the shipments were to arm his employees at his gas station with weapons so they could protect the gas station. EUGENE stated that no gangs or politicians had requested he smuggle guns to Haiti.

### *Evidence Showing EUGENE's Connection to 400 Mawozo*

40.      There is probable cause to believe that EUGENE was exporting weapons for the benefit of a Haitian gang known as "400 Mawozo."400 Mawozo is a criminal organization that operated in the Croix-des-Bouquets area to the east of Port-au-Prince, Haiti. Between at least in or about June 2021 to in or about December 2021, 400 Mawozo was involved in an armed hostage

taking for ransom conspiracy of U.S. citizens located in Haiti, including the hostage taking of 16 U.S. Christian Missionaries who were taken hostage in October 2021.

41.     Joly GERMINE is a Haitian national and was a leader of 400 Mawozo. At all times relevant to this Complaint, GERMINE was incarcerated in Haiti, but according to his own statements, still served as a leader of the organization in Haiti and directed operations from prison using unmonitored cellular phones. On May 4, 2022, GERMINE was arrested on charges related to arms trafficking by 400 Mawozo, in a case brought in the U.S. District Court for the District of Columbia. *See* Case No. 21-cr-699. GERMINE pleaded guilty to an indictment, alleging a conspiracy to traffic weapons from Florida to Haiti and other charges, in January 2024.

42.     Lanmo SANJOU is a Haitian national and a leader of 400 Mawozo. SANJOU served as a leader of 400 Mawozo in Haiti, taking on a leadership role while GERMINE was incarcerated. SANJOU has appeared on videos posted on social media, stated his name, and declared himself as the leader of 400 Mawozo, including videos posted on social media sites YouTube and Facebook on or about October 22, 2021. SANJOU has given video recorded statements to the Haitian press in which he claims to be the leader of 400 Mawozo, including in videos posted by press organizations on or about April 13, 2020, and September 6, 2021. In July 2022, SANJOU was indicted in the U.S. District Court for the District of Columbia on charges related to hostage takings by 400 Mawozo in Case No. 22-cr-249.

43.     Jean PELICE is a Haitian national and was a member of 400 Mawozo. On May 14, 2022, PELICE was arrested on charges related to 400 Mawozo hostage takings, in a case brought in the U.S. District Court for the District of Columbia in Case No. 22-cr-246. Law enforcement spoke with PELICE in a custodial interview while he was in custody in the Dominican Republic on or about April 28, 2022. During that interview, PELICE stated "Jean Wiltene" was an arms

14

trafficker who sent firearms and ammunition to 400 Mawozo in Haiti. Specifically, PELICE stated

he witnessed "Jean Wiltene" giving rifle magazines to SANJOU on behalf of GERMINE. In a

subsequent custodial interview on or about June 7, 2023, PELICE confirmed that Jean Wiltene

owns a gas station in Haiti, and had sold him a gun magazine in the past.

44.    According to cell phone records from both U.S. and Haitian providers, members of

400 Mawozo made repeated telephonic contact with EUGENE:

a.  Cell phone records from both Haitian providers and U.S. providers show 38 calls

between EUGENE (using a cell phone ending in *3111) and SANJOU (using a cell

phone ending in *4844) between August 5 and October 27, 2021. The combined

duration of approximately 21 phone calls during this time frame between

EUGENE*3111 and SAN JOU *4844 was over approximately six hours;

b.  Cell phone records from both Haitian providers and U.S. providers show 87 calls

between EUGENE (using a cell phone ending in *3111) and SANJOU (using a cell

phone ending in *7977) between October 17, 2021, and April 6, 2022;

c.  Cell phone records from both Haitian providers and U.S. providers show 15 calls

between EUGENE (using a cell phone ending in *3111) and SANJOU (using a cell

phone ending in *4217) between March 25 and May 14, 2022;

d.  Cell phone records from both Haitian providers and U.S. providers show 10 calls

between EUGENE (using a cell phone ending in *3111) and PELICE (using a cell

phone ending in *4574) between October 19 and December 31, 2021, and the

combined duration of 7 calls during this time frame was approximately 14 minutes;

e.  Cell phone records from both Haitian providers and U.S. providers show 15 calls between EUGENE (using a cell phone ending in *3111) and PELICE (using a cell phone ending in *1256) between January 2 and March 11, 2022; and

f.  Cell phone records from both Haitian providers and U.S. providers show 85 calls between EUGENE (using a cell phone ending in *3111) and GERMINE (using a cell phone ending in *1441) between April 8 and May 2, 2022.

## **REQUEST TO SUBMIT WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

45.    I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for an Arrest Warrant. I submit that Assistant U.S. Attorney Karen P. Seifert, an attorney for the United States, is capable of identifying my voice and telephone number for the Court.

## CONCLUSION

46.      Based on the forgoing, I submit that there is probable cause that between at least

on or about February 10, 2020, and September 23, 2021, EUGENE has committed multiple counts

of offenses 22 U.S.C. § 2778 (Arms Export Control Act); 50 U.S.C. § 4819 (Export Control

Reform Act); and 18 U.S.C. § 554(a) (Smuggling).

Respectfully submitted,

_____

Daniel Lemaitre
Special Agent
Federal Bureau of Investigation

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on April 29, 2024.

_____
MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE